

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG
F.#2006R02288

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 17, 2012

The Honorable Brian M. Cogan
United States District Court
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   United States v. Rafael Pantoja
              Criminal Docket No. 08-0212 (S-3)(BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in opposition to the defendant Rafael Pantoja's pro se motion to withdraw his guilty plea entered on February 17, 2010. Pantoja seeks to withdraw his guilty plea to two counts of bank fraud conspiracy on the ground that the government failed to disclose information obtained through an investigation of the victim banks, which he claims exculpates him of the charged crimes. For the reasons set forth below, Pantoja's motion is without merit.

BACKGROUND

I.    Charged Crimes

      In an indictment unsealed on May 2, 2008, the defendant was charged with conspiring to execute a scheme to defraud ABN Amro Mortgage Group ("ABN Amro") and executing such a scheme, all in or about and between 2000 and 2003. (Docket Entry No. 1). On February 17, 2012, the defendant waived indictment and pleaded guilty to a superseding information, charging Pantoja with conspiring to defraud two financial institutions, ABN Amro and Ohio Savings Bank, in connection with a mortgage fraud scheme. The following colloquy took place at the guilty plea hearing:

        The Court:    Would you tell me in your own
                        words, please, what did you do
                        in regard to each of those
                        financial institutions.

Hon. Brian M. Cogan
May 17, 2012
Page 2

>
> | | | |
> |---|---|---|
> | [Def. Atty.]: | | Your Honor, if I may, I scripted this out and we discussed it.  Can he read from this? |
> | The Court: | | You certainly may. |
> | The Defendant: | | With regard to ABN Amro and Ohio Savings Bank, I had an agreement with others to committee [sic] bank fraud.  As part of that agreement, documents were submitted to the banks so that excessive monies could be lent and the spreads were distributed amongst the parties. |
> | The Court: | | Did you know that false documents were going to be submitted to each institution? |
> | The Defendant: | | Yes. |

(Tr. at 20-21).

II. <u>Pantoja's Motion to Withdraw His Guilty Plea</u>

In March 2012, the United States and 49 states filed a 99-page complaint (the "Complaint") against Bank of America and other banks; a copy of the Complaint is attached as Exhibit A. The Complaint initiated a civil action against several banks "for misconduct related to their origination and servicing of single family residential mortgages."  <u>See</u> Ex. A ¶ 1.  Among many others, representatives from the Civil Division of the United States Attorney's Office for the Eastern District of New York signed the Complaint.  As a result, Pantoja claims that the government knew that the victim banks "possessed actual knowledge that the information, statements and representations on loan applications were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations, or acted in reckless disregard of the truth or falsity of the information, statements and representations." (Mot. at 3).

Hon. Brian M. Cogan
May 17, 2012
Page 3

DISCUSSION

I.   Legal Standard

To withdraw a guilty plea, the defendant bears the burden of showing "a fair and just reason for requesting the withdrawal." See Fed. R. Crim. P. 11(d)(2)(B).  The standard is difficult to meet, as "society has a strong interest in the finality of guilty pleas," United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997), and allowing withdrawal of pleas "increases the volume of judicial work, and delays and impairs the orderly administration of justice." United States v. Sweeney, 878 F.2d 68, 70 (2d Cir. 1989).  Allowing the withdrawal of pleas also "undermines confidence in the integrity of our judicial procedures." Id.  The Supreme Court has noted that a guilty plea is not a "trifle, but a 'grave and solemn act,' which is 'accepted only with care and discernment.'" United States v. Hyde, 520 U.S. 670, 677 (1997).  Accordingly, a plea may not be withdrawn "on a lark." Id. at 676-77 (permitting withdrawal of guilty plea without reason would "degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess").  However, the government's withholding of Brady material typically warrants "a fair and just reason" to withdraw a guilty plea. United States v. Avellino, 136 F.3d 249, 261-62 (2d Cir. 1998) ("However, where a Brady violation is established, that is, the court has found that the government withheld favorable information from the defendant and has ruled that there is a reasonable probability that the information, if disclosed, would have led the defendant not to plead guilty, we are unaware of any authority for the proposition that the court has discretion to deny the motion.").

To establish a Brady violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also In re United States (Coppa), 267 F.3d 132, 139 (2d Cir. 2001).  "Evidence is favorable to the accused if it either tends to show that the accused is not guilty or if it impeaches a government witness." United States v. Gil, 297 F.3d 93, 101 (2d Cir. 2002) (citations omitted).

Hon. Brian M. Cogan
May 17, 2012
Page 4

II. <u>Analysis</u>

As detailed below, Pantoja's motion to withdraw his guilty plea is meritless for two independent reasons. First, Pantoja has not established that the information contained in the Complaint was favorable to him. Second, even assuming <u>arguendo</u> that it was favorable (it was not), Pantoja has not established that the government suppressed this information.

A. <u>The Complaint Did Not Contain Favorable Information</u>

Nothing in the Complaint amounts to <u>Brady</u> material. As an initial matter, the Complaint does not pertain to the banks Pantoja conspired to defraud, namely, ABN Amro or Ohio Savings Bank. Because there is no support for Pantoja's claim that the banks he conspired to defraud were parties to any of the conduct alleged in the Complaint, the information set forth in the Complaint cannot constitute <u>Brady</u> material.

At best, the Complaint suggests that other banks – not ABN Amro or Ohio Savings Bank – engaged in "unfair and deceptive practices" that "caused borrowers . . . to enter into unaffordable mortgage loans" and failed to implement a "fully functioning Quality Control Program" that reviewed all early payment defaults; put another way, the Complaint alleged that some banks failed to take sufficient steps to protect against the risk that false documentation was submitted in support of mortgage applications. (<u>See</u> Ex. A ¶¶ 67, 86-89). Even assuming <u>arguendo</u> that the banks Pantoja conspired to defraud engaged in the same types of conduct alleged in the Complaint, there is nothing exculpatory about such information. Notably, the Complaint does not allege that any of the banks were complicit with individuals like Pantoja and his coconspirators who submitted false documentation; absent an allegation that the banks were complicit, that some banks acted with reckless disregard does not exculpate Pantoja in any manner of his participation in a "scheme" to defraud and to obtain money and property by false statements.[1]

---

[1] To establish a bank fraud violation, the government is not required to prove that a bank was, in fact, defrauded; it must only prove that a bank's risk of loss increased in that there was "some possibility – at least a potential" that the bank would rely on the false information. <u>United States v. Jacobs</u>, 117 F.3d 82, 93 (2d Cir. 1997) ("But, for purposes of this

B.  The Government Did Not Suppress The
    Information Set Forth In The Complaint

In any event, Pantoja has not established that the government – *i.e.*, the prosecutors assigned to the prosecution of Pantoja – suppressed any favorable material. Although "[a]n individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police[,]'" Avellino, 136 F.3d at 255 (quoting Kyles v. Whitney, 514 U.S. 419, 437 (1995), and citing United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995)), the presumption does not extend to the government as a whole. As the Second Circuit has explained:

> knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a "monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis."

---

statute [18 U.S.C. § 1344], the risk can be said to have been increased in that there was some possibility – at least a potential – that the bank would release security, delay efforts at collection or otherwise act in reliance upon its receipt of the certified drafts. Admittedly, the possibility of such actions in reliance may be rather remote since banks are cautious; but such actions are not impossible and, under the case law, a mere possibility of detrimental reliance is enough. In other words, the bank has been put in harm's way and, for purposes of construing the statute, we must assume a highly incautious bank."). Therefore, only if the banks were actually complicit in the conspirators' scheme can it be said that there was no possibility that they might have relied upon the false documentation in issuing a mortgage.

Hon. Brian M. Cogan
May 17, 2012
Page 6

<u>Id.</u> (quoting <u>United States v. Gambino</u>, 835 F. Supp. 74, 95 (E.D.N.Y. 1993), aff'd, 59 F.3d 353 (2d Cir. 1995)).

      Pantoja suggests that although the criminal division of the Office of the United States Attorney for the Eastern District of New York may not have had any knowledge about the alleged <u>Brady</u> material, the civil division did have such knowledge because they, among many others, signed the Complaint. However, as described above, neither ABN Amro, nor Ohio Savings Bank – the banks with which Pantoja was charged with defrauding – was named as a defendant in the Complaint. Moreover, this Office's participation in the civil action did not relate in any manner to any misconduct by ABN Amro or Ohio Savings Bank. Accordingly, even if knowledge of the civil division of this Office could be imputed to the prosecutors assigned to the Pantoja prosecution, there was no suppression of any <u>Brady</u> material.

CONCLUSION

      For the reasons set forth above, the defendant's motion should be denied.

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney

                          By:   /s/
                                      Elizabeth A. Geddes
                                      Assistant U.S. Attorney
                                      (718) 254-6430

cc:  Howard Jacobs, Esq. (by ECF)