```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
UNITED STATES OF AMERICA,                       :
                                                :   **MEMORANDUM**
                                                :   **DECISION AND ORDER**
              - against –                       :
                                                :   08-cr-212 (BMC)
                                                :   20-cv-794 (BMC)
    RAFAEL PANTOJA,                             :
                                                :
                         Defendant.             :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendant seeks habeas corpus relief pursuant to 28 U.S.C. § 2255 from his conviction on a guilty plea for violating his supervised release, for which I sentenced him to 17 months custody. His contention is that the Government failed to turn over what he contends was Brady information prior to his sentencing, which would have enabled him to better defend against the violation charge, and that his Probation Officer conspired with his state court adversaries' lawyer to deprive him of real estate that he thought he owned. His claim has no merit and a hearing is unnecessary because the lack of merit is apparent on the papers filed.

## BACKGROUND

In 2012, I sentenced defendant to 18 months' custody and five years' supervised release for bank and wire fraud.[1] In essence, he was one of a group of co-conspirators who schemed to transfer real estate owned by deceased persons or which had been abandoned.[2] The real estate

---

[1] At the time, defendant had been sentenced in state court to 54 months' to nine years' custody for a separate mortgage fraud conviction.

[2] Defendant was previously an attorney admitted to practice in New York but had been disbarred. See Matter of Pantoja, 218 A.D.2d 292, 638 N.Y.S.2d 302 (1st Dep't 1996).

was transferred to shell companies that defendant owned including, as relevant to the instant motion, a shell company named Rapsil Corporation, for which he was the sole signatory. The co-conspirators took out mortgages for the phony sales and divvied up the proceeds.

The instant motion arises from a second violation report in 2018, this one on October 12th. Defendant was charged with twelve violations, and subsequently pled guilty to eight of them, the Government voluntarily withdrawing the rest. The charges to which he pled guilty arose from the conditions of supervised release that required him to refrain from committing a new crime; making false statements to Probation; failing to follow Probation's instructions; and engaging in real estate transactions. In addition, he pled guilty to violating terms that required him to make full financial disclosure to Probation and obey the rules and conditions of the Residential Re-Entry Center. On July 15, 2019, I sentenced him to 17 months' custody with no supervision to follow, having concluded that he was not amenable to supervision.

The sole subject of the present habeas motion is the first charged violation of the October 12, 2018 report – "commission of a new crime." The alleged new crime was making a false representation in the financial statement that defendant had submitted to his Probation Officer, Javier Enciso, in violation of 18 U.S.C. § 1001, a Class D felony. The false statement related to Rapsil's double- or triple-transfers (through defendant) of a parcel of real estate in the Bronx (the "Property").[3]

Specifically, in 2001, defendant caused Rapsil to convey the Property to him, taking out a mortgage. Before the mortgagee could record the mortgage, defendant caused Rapsil to sell the Property again, this time to another company that then flipped it to third-party purchasers – Ana

---

[3] This was not one of the properties involved in defendant's fraud charged in this underlying case.

2

Salazar, Bernice Collado, and Intervenida Salvador (collectively, the "Purchasers") – who also took out mortgages. At various times, the Purchasers were represented by an attorney named Lee E. Riger.

It would not have been hard to foresee the amount of litigation in state court that it took to straighten out the mess that defendant had created through the double-sale and the mortgages that became attached to each one of those sales. See, e.g., Citimortgage, Inc. v. Pantoja, 176 A.D.3d 655, 111 N.Y.S.3d 584 (1st Dep't 2019); ABN Amro Mortgage Group, Inc. v. Pantoja, 91 A.D.3d 440, 936 N.Y.S.2d 163 (1st Dep't 2012). The relevant part of the state court litigation for present purposes was a decision of the Supreme Court, Bronx County (Thompson, J.S.C.), dated January 22, 2015 (the "State Court Decision"), in an action that the Purchasers brought against defendant and Citimortgage. In that decision, the court declared that "the deed purportedly conveying the subject property from Rapsil to Pantejo [sic] dated July 27, 2001 and recorded October 5, 2001 is void as against all subsequent purchasers … ."

Notwithstanding that determination, petitioner took two actions that led to charge one of the violations against him. First, on July 13, 2016, he caused Rapsil to again purport to deed him the Property, filing what he called a "Corrected Deed." Second, building on this, on October 25, 2017, defendant submitted a financial statement to Probation in which he claimed he was the sole owner of the Property. That was the false statement with which he was charged and to which he pled guilty.

In his present habeas motion, defendant contends that the Government failed to disclose in advance of his plea that two of the three Purchasers – Ana Salazar and Intervenida Salazar –

3

had died prior to his guilty plea.[4]  His theory appears to be that since these were "key witnesses for the Government," their demise would have made it impossible or at least more difficult for the Government to prove the violation in charge one, and that had he known these witnesses were unavailable, he would not have pled guilty.  He also alleges that Probation Officer Enciso was in league with Riger, conspiring to deprive him of his interest in the Property, which is one reason why the witnesses' deaths were concealed.

## DISCUSSION

"Section 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law."  Thai v. United States, 391 F.3d 491, 493 (2d Cir. 2004).  However, "[b]ecause collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction" through a proceeding under § 2255 than by direct appeal.  Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (citations and quotations omitted).  The statute thus allows relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  For each ground for relief, a petition under § 2255 must set forth "specific

---

[4] Only one of the Purchasers had died prior to defendant's guilty plea.  It makes no difference.

facts which he is in a position to establish by competent evidence." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) (citation omitted).[5]

According to the rule set forth in Brady v. Maryland, 373 U.S. 83 (1963), the Government has an obligation to "disclose material evidence favorable to a criminal defendant." United States v. Orena, 145 F.3d 551, 557 (2d Cir.1998). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. There are three mandatory requirements to prove a Brady violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the Government, either willfully or inadvertently; and (3) the defendant must have suffered prejudice. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Defendant's showing fails to satisfy any of these criteria.

First, the Salazars were not "key witnesses for the Government" – in fact, they were not witnesses at all – and the fact of their demise was neither exculpatory or impeaching. This is because the Government didn't need any witnesses to prove that defendant had falsely claimed ownership of the Property on his financial statement. All the Government needed was the financial statement; the State Court Decision invalidating Rapsil's transfer to him; and the "Corrected Deed" in which he again tried to reconvey the Property. Those three documents showed conclusively that petitioner had lied to his Probation Officer.

---

[5] The Government has pointed out that I have the discretion to deny this motion without prejudice to renewal upon exhaustion of defendant's direct appeal, which is pending. See United States v. Outen, 286 F.3d 622, 632 (2d Cir. 2002). The issue raised by this motion and those in his pending appeal are unrelated, and my experience with defendant is that he is not going to let this matter drop. I am therefore deciding the motion now.

Having gotten to know defendant over the last twelve years, I have to agree with the Government that what he is attempting to do is relitigate his case against the Purchasers in the context of the present habeas action. His argument is that with the Salazars unavailable, he would have had a smoother road to prevail on his theory of ownership that he lost in the State Court decision. He believes that his version of how he obtained legal ownership, because the Salazars were no longer able to contradict it, would have carried they day. But putting aside that the Salazars' affidavits would have been available to contradict defendant in the context of a violation proceeding, a hearing would have never gotten that far. The matter was settled by the State Court Decision. I would not have let him mount that defense a second time had he gone to a hearing on the charge before me, and I am not going to hear it now.

Defendant's strategy is fully consistent with his unjustified self-confidence, his tendency to think that he can get almost anyone to believe almost anything. He shares that attribute with many con artists. After so many failures to walk away from his various cons and resulting convictions, one would think defendant would learn his lesson. But he can't.

Since the fact of the Salazars' deaths did not constitute exculpatory or impeaching evidence, it follows that defendant cannot demonstrate the other two requirements for a <u>Brady</u> violation. In particular, he cannot show that the Government (in which I include Probation) "withheld" any information. It appears that defendant learned of the Salazars' demise on September 25, 2019 from an affidavit filed in the continuing state court litigation. That was months after I had sentenced him for the violation in question. He has submitted nothing to show that the Government had any earlier notice about it then he did.

It similarly follows that defendant cannot show any prejudice. As noted above, I was not going to hear his story as part of his defense to the violation because the state court had already rejected it. Thus, even if there had been a non-disclosure, defendant suffered no prejudice.[6]

Finally, I note that because defendant pled guilty to so many other charged violations, which he has not challenged in this motion, the sentence would have been the same even had he not pled guilty to charge one. It is true that his Guidelines' range for charge one was a few months higher than his range for the other charges to which he pled guilty (18-24 months v. 7-13 months), but the Guidelines played little role in his sentence. Even pre-Booker, the Guidelines addressing supervised release violations were merely advisory, see United States v. Anderson, 15 F.3d 278, 284 (2d Cir. 1994), and my determination to sentence him to 17 months was based primarily on the incorrigibility that led to his multiple breaches of trust and the inability to trust him any further by including a new term of supervised release.

## CONCLUSION

Defendant's [224] motion for § 2555 relief is denied. Since he has failed to raise a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals *in forma pauperis* is denied. See Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      April 6, 2020

---

[6] Defendant's allegation that his Probation Officer and the Purchasers' lawyer have "conspired" to deprive him of the Property is unsupported.